ELIZABETH WHITE, ADMINISTRATRIX OF THE ESTATE OF ALFRED WHITE, DECEASED, PLAINTIFF-APPELLANT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.

Argued February 5, 1937—Decided April 30, 1937.

For the plaintiff-appellant, *Abraham M. Herman*.

For the defendant-respondent, *Verling C. Enteman, Augustus C. Studer, Jr.*, and *McCarter & English*.

The opinion of the court was delivered by

CASE, J. Plaintiff's intestate was her son, a school boy fifteen and one-half years of age. He was shot and killed by a bullet from a revolver shot by Howard Van Riper. The defendant company insured the boy's life under policies which provided for certain payments at death and also for increased payments if the death should result from "external, violent and accidental means." The ordinary death amount was paid. Plaintiff sued to recover the insurance for accidental, violent death. It was conceded that the death was violent and from external means. The dispute was upon whether or not it was accidental. The trial court nonsuited, and plaintiff appeals.

The testimony comes from the lips of Van Riper who is, inferentially, a police officer of the borough of Glen Ridge, although we find no direct testimony to that effect. Van

Riper testified that "we," meaning himself and "Officer Perry"—again inferentially—a brother police officer, were riding in a police car and that the two were given, apparently by telephone from local police headquarters, an announcement that two cars had been stolen, one from Bloomfield and the other from Montclair. The officers were told the numbers of the cars, and a car bearing one of those numbers came within their view. They pursued in what became rather a wild race, wherein Perry fired what the witness called a warning shot, although we cannot be certain what that shot, in the darkness of night, meant to the pursued boys. Two unnamed boys were in the front seat of the car ahead, one of them at the wheel. Young White occupied the rear seat, and so far as the witness could see had no control over the car. Finally, the pursued car became out of control, careened about and stopped. White got out, ran in the direction of the police car, turned around, was commanded to halt and started running in the opposite direction. The witness, from the police car through the partly opened door thereof, fired a low shot intending to hit the sidewalk, but the bullet hit White in the back and caused his death.

As we have said, there is no testimony stating flatly that the witness was a police officer. There is no evidence that either he or his companion was in uniform, or that White knew the men were officers or that White heard the command to halt just before the shot was fired. There is no competent proof that the car in which White rode had actually been stolen or that the boys were not lawfully in possession thereof. The information that came to the officers was, when related on the witness stand, hearsay; possibly admissible to give a rational and comprehensible account of the witness' actions, but certainly not competent to prove a felonious act by the decedent. Even if we assume that the car had been stolen, there is no proof that White had participated in, or knew of, the theft. Whatever inferences against the plaintiff the jury, had it had the opportunity, might have drawn from the facts in proof, the court, on the motion for nonsuit, was under the duty to give to the plaintiff, against whom the motion

was made, the benefit of all legitimate inferences which were to be drawn therefrom in her favor. *Mulrooney* v. *O'Keefe,* 98 *N. J. L.* 853. As the testimony stands, it may be that the car was not stolen; that White had no control over the car or its erratic course; that he did not know that he was under suspicion of crime and therefore liable to arrest or that his pursuers were police officers; and that he had no information or belief that the pursuers, even though police officers, had either the authority or the intention to fire a deadly weapon upon him while in flight. To the possibilities is to be added the fact that, while the discharge of the weapon was purposeful, the bullet did not take its planned course and that the impact of it against White's body was in that sense accidental; and this is important as related to the hypothesis that White had not committed larceny and did not know that he was suspected of or pursued on account of that crime. On this view of the facts *Walters* v. *Prudential Insurance Co.,* 116 *N. J. L.* 304, is clearly not a precedent for sustaining the nonsuit. We conclude that the court erred in ruling, as a matter of law, that the plaintiff had not proved a *prima facie* case.

The inconclusiveness of the proof of larceny is further manifested by the absence of any factual detail from which it may be inferred that the act, information of which was relayed to the police officers as of the theft of a car, was accompanied by such an intent permanently to deprive the owner of the vehicle of his property as was necessary to constitute the taking a theft under our law. See *State* v. *South,* 28 *N. J. L.* 28; *State* v. *Davis,* 38 *Id.* 176, and *State* v. *Bullitt,* 64 *Id.* 379, discussed in *State* v. *Hauptmann,* 115 *Id.* 412 (at *p.* 426). If there was a taking without such intent and that should be found to be the state of the proofs, then a lesser offense than a common law felony was committed, and it seems that a police officer in making an arrest was without lawful authority to kill a fleeing offender. See generally 5 *C. J.* 425, *lit. "Arrest,"* §§ 60 *et seq.,* and Chief Justice Depue's charge to a grand jury. 9 *N. J. L. J.* 167. It may well be questioned whether White could be held abso-

lutely to actual or implied foresight or expectation that an officer of the law would, under those circumstances, fire upon him while he, unarrested, was in flight and the officer was in no personal danger. It is the viewpoint of the insured which governs.

The judgment below will be reversed, and a *venire de novo* will issue.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Perskie, Hetfield, Dear, Wells, WolfsKeil, Rafferty, Cole, JJ. 16.