**In re the ESTATE OF Lucy G. HECKMAN, a/k/a Lucy F. Heckman, Deceased.**

**Marjorie R. Heckman, as personal representative; Marjorie R. Heckman, individually; Amy E. Titcombe; and Roxanne L. Desrochers, Plaintiffs–Appellants,**

v.

**J.C. Penney Life Insurance Company, Defendant–Appellee.**

No. 00CA2225.

Colorado Court of Appeals, Div. IV.

Nov. 23, 2001.

Law Offices of Timothy J. Tuthill, P.C., Timothy J. Tuthill, Cortez, CO, for Plaintiffs–Appellants.

Casey & Seibert, L.L.C., James A. Casey, Durango, CO, for Defendant–Appellee.

Opinion by Judge DAILEY.

In this action to recover accidental death insurance benefits, plaintiffs, the Estate of Lucy G. Heckman, Marjorie R. Heckman, acting both as personal representative of the estate and in her own individual capacity, Amy E. Titcombe, and Roxanne L. Desrochers, appeal the judgment entered in favor of defendant, J.C. Penney Life Insurance Company. We affirm.

## I.

Lucy G. Heckman (Heckman) purchased two accidental death and dismemberment policies from defendant. Except for the amount of benefits provided, both policies were identical and allowed different levels of benefits, depending upon whether a loss was incurred as a result of a private passenger automobile/land motor vehicle accident.

At about 7 p.m. on May 7, 1997, the 62–year–old Heckman drove her pickup truck through the town of Dunton, Colorado. A mile north and west of Dunton, she encountered snow on a forest service road. When she attempted to back down the road, her pickup truck went off the shoulder of the road, over a small embankment, and became wedged between two trees.

Heckman suffered slight cuts and scratches on her forehead and legs. She spun the truck's tires in an unsuccessful attempt to extricate it from the trees. And, she was conscious and moving about for some time before succumbing to, and dying of, hypothermia twenty feet away from her truck.

Heckman had moved away from, rather than towards, the nearby road. Two full bottles of whiskey were found in her truck; an empty whiskey bottle was found near her body; and a toxicology report indicated that, at the time of her death, her blood alcohol level was .079%.

The coroner's certificate of death listed the immediate cause of Heckman's death as hypothermia, due to or as a consequence of "vehicle disabled in a remote area."

Defendant paid plaintiffs $80,000 in accidental death benefits. Thereafter, plaintiffs sued for breach of contract and bad faith breach of insurance contract, claiming that defendant owed them an additional $165,000 under that part of the policies providing benefits for losses incurred "in consequence of Occupying a Private Passenger Automobile."

The policies set forth the following pertinent definitions:

OCCUPYING means in or in direct contact with.

LOSS means loss of life. Also, Loss as used with reference to a hand or foot means complete severance at or above the wrist or ankle joint. Used with reference to the eye, means total and irrecoverable loss of the entire sight of an eye. Loss does not include loss of use.

INJURY means bodily injury caused by an accident occurring while the insurance is in force resulting:

1. within 90 days after the date of the accident; and,

2. directly and independently of all other causes.

Defendant moved for summary judgment, arguing that: (1) Heckman could not have suffered a compensable bodily injury (death) "in consequence of occupying" her vehicle, because she died not inside, but outside, her vehicle; and (2) no reasonable argument could be made, under the "directly and independently of all other causes" language, that the vehicle's going off the road and getting stuck was the direct and sole cause of her death.

In their response to the motion for summary judgment, plaintiffs argued that defendant had misconstrued the language of the policies and that, to recover the additional moneys, they need show only that: (1) Heckman was injured as a result of occupying the vehicle; and (2) "but for" her operation of the vehicle, she would not have died of hypothermia. According to plaintiffs, they were not required, under the terms of the

policy, to show either that Heckman died as a result of her cuts or bruises or that the accident was the proximate cause of her death.

The trial court granted defendant's motion for summary judgment, reasoning that, under the clear and unambiguous terms of the policies, plaintiffs could not prevail:

> There is no evidence in the record to indicate that Lucy Heckman suffered a compensable loss (death) while occupying her vehicle. Moreover, the official determination of the cause of Ms. Heckman's death was hypothermia. This undisputed fact renders it impossible for Plaintiffs to prove that 'Ms. Heckman's death was caused by an accident directly and independently of all other causes.

## II.

■ Plaintiffs contend that the trial court erred in granting summary judgment without permitting them an opportunity to conduct adequate discovery. We disagree.

In their response to the motion for summary judgment, plaintiffs requested further time to engage in discovery as an alternative to a merits ruling on the motion for summary judgment. However, because plaintiffs did not submit an affidavit as required by C.R.C.P. 56(f), we cannot conclude that the court erred in failing to defer ruling on defendant's motion for summary judgment. *See Raygor v. Board of County Commissioners,* 21 P.3d 432, 436 (Colo.App.2000); *Card v. Blakeslee,* 937 P.2d 846, 849 (Colo.App. 1996).

## III.

Plaintiffs next contend that, in granting summary judgment, the trial court applied an erroneous interpretation of the policies to the facts of the case. Plaintiffs argue that the policies did not require either that Heckman die inside the truck or solely as a result of the accident; instead, in plaintiffs' view, the policies require only a showing that the accident was part of the causal chain leading to her death. We agree in part, but conclude that summary judgment was proper nonetheless.

■ Both interpretation of an insurance policy and the granting of a motion for summary judgment are subject to de novo review by this court. *See Colonial Insurance Co. v. American Hardware Mutual Insurance Co.,* 969 P.2d 796, 798 (Colo.App.1998)(interpreting insurance policy); *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251, 1256 (Colo.1995)(order granting summary judgment).

■ An insurance policy is a contract, which should be construed to give effect to the intent of the parties. *Compton v. State Farm Mutual Automobile Insurance Co.,* 870 P.2d 545, 547 (Colo.App.1993). In construing an insurance policy, we read its provisions not in isolation but together as a whole, *Lopez v. Dairyland Insurance Co.,* 890 P.2d 192, 195 (Colo.App.1994), and we give words their plain meaning according to common usage. *Bengtson v. USAA Property & Casualty Insurance,* 3 P.3d 1233, 1235 (Colo.App.2000). Unless there is an ambiguity, an insurance policy should be enforced as written. *Bengtson v. USAA Property & Casualty Insurance, supra.*

■ Initially, we determine that because under the policies it is clear that a compensable "injury" can occur up to ninety days after the date of an accident, the trial court erred in concluding that under the policies Heckman would have to have actually died in her vehicle. *See JCPenney Life Insurance Co. v. Baker,* 33 S.W.3d 417, 424 n. 4 (Tex.App. 2000).

Plaintiffs are incorrect, however, in arguing that the policies allow recovery merely upon a showing of a minimal causal relationship between the accident and Heckman's death.

■ The policies' "directly and independently of all other causes" language imposes upon plaintiffs the burden of showing that the accident was the predominant cause of Heckman's death. *See Carroll v. CUNA Mutual Insurance Society,* 894 P.2d 746, 754–55 (Colo.1995); *Continental Casualty Co. v. Maguire,* 28 Colo.App. 173, 178–79, 471 P.2d 636, 638–39 (1970).

■ Predominant cause has also been described as the active, efficient, dominating, originating, or direct proximate cause. *See Carroll v. CUNA Mutual Insurance Society, supra,* 894 P.2d at 755. It is "not necessarily the last link in the chain of events, but that . . . from which the effect might be expected to follow, without the concurrence of any unforeseen circumstances." 7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 101:46, at 101–140 through 101–141 (3d ed. 1997). *See Bohrer v. Church Mutual Insurance Co.,* 965 P.2d 1258, 1265 (Colo.1998)(efficient proximate cause sets in motion other causes, which, in an unbroken sequence, produce the result for which recovery is sought); *Ore v. Aetna Life Insurance Co.,* 435 F.2d 957, 959 (6th Cir.1970)(efficient and predominating cause operates with reasonable certainty to occasion the loss).

■ "[W]here a chain of events is set in motion by the peril insured against and is broken by a new and independent cause intervening between the peril insured against and the injury, but for which the injury would not have occurred, the peril insured against is the remote and not the proximate cause of the injury." *See Couch on Insurance, supra,* § 101:49 at 101–143.

■ Proximate cause is ordinarily a question of fact for the jury and may be decided as a matter of law only when reasonable minds could draw but one inference from the evidence. *See Walcott v. Total Petroleum Inc.,* 964 P.2d 609, 611 (Colo.App.1998).

■ Here, we conclude as a matter of law that Heckman's automobile accident was not the predominant cause of her death. The accident clearly started the chain of events leading to her death. But she did not die of injuries sustained in the accident; those injuries did not leave her incapacitated; the accident did not put her in a state of unconsciousness from which she did not recover; she was not ejected from the vehicle into the cold weather by the accident; and her vehicle was not, as a result of the accident, left in a lethally perilous position.

The only inference that can be drawn from the undisputed evidence in this case is that, for whatever reason, Heckman voluntarily left the shelter of her vehicle and exposed herself to the rigors of the cold outdoors. She made no attempt to walk the mile back to town for help but instead positioned herself away from the road, where she remained exposed to the cold. As a matter of law, her voluntary exposure to unnecessary danger constituted an intervening, superseding cause of death.

Because Heckman's own action, rather than the accident, was the predominant cause of her hypothermia and death, the trial court did not err in granting summary judgment for defendant. *See Continental Casualty Co. v. Hawkins,* 236 Ark. 302, 304–05, 365 S.W.2d 722, 723–24 (1963)(as a matter of law; death benefits not available under similarly worded policy, where car was stuck in an unimperiled position near high flood waters and insured drowned after removing herself from the safety of the car).

Accordingly, the judgment is affirmed.

Judge DAVIDSON and Judge RULAND, concur.